[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 4577
The plaintiff, John C. Pierpont, Sr., filed a single count complaint against the defendants, Joan P. Tenedine and Edward G. Pierpont, Jr., on January 24, 2001. This action arises out of a breach of contract which allegedly occurred when the defendants refused to honor a sales agreement entered into by the plaintiff and Edward G. Pierpont, Sr., (decedant), the deceased senior and trustee of a trust of which the plaintiff and the defendants are currently beneficiaries and cotrustees. The defendants filed their motion for summary judgment on October 11, 2001. The plaintiff filed his memorandum in opposition on November 13, 2001.
"[Summary judgment] shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . ." (Internal quotation marks omitted.) Appleton v. Board of Education of Stonington,254 Conn. 205, 209, 757 A.2d 1059 (2000). Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. United Technologies Corp. 233 Conn. 732, 751, 660 A.2d 810
(1995).
As previously stated, this action arises out of a breach of contract which allegedly occurred when the defendants refused to honor a sales agreement entered into by the plaintiff and the decedent. On January 26, 1989, the decedent created a trust under which he was settlor and trustee. The corpus of the trust consisted of real property located at 56 State Street, North Haven, Connecticut (subject property). On November 1, 2000,[1] the decedent and the plaintiff entered into a written agreement whereby the decedent agreed to sell the subject trust property to the plaintiff for the purchase price of $200,000. The decedent died on November 11, 2000, at which time the plaintiff and the defendants became cotrustees and beneficiaries of the subject trust. The subject sales contract provides, in part, that the "[c]ontract shall be binding upon . . . the heirs, personal representatives, successors and assigns of the parties." (Sales Contract, ¶ 28.) In his complaint, the plaintiff alleges that because the defendants are "heirs, personal representatives, successors and assigns" of the decedent, they are bound by the subject contract, and, having refused to honor the subject contract, they are in breach of contract.
In their motion for summary judgment, the defendants argue that the subject contract is unenforceable as a matter of law. By way of a special CT Page 4578 defense, filed on June 20, 2001, they allege that on July 19, 2000, by amendment to the trust, the decedent appointed the plaintiff and the defendants successor trustees in the event of his death or legal incapacity, as well as beneficiaries of the trust. They also allege that at that time, the decedent deleted article 5 of the trust instrument (Article 5), which provided for the settlor's right of amendment or revocation of the trust. The defendants argue that by deleting article 5, the decedent made the trust irrevocable. Because the trust was irrevocable at the time the decedent entered into the subject sales contract with the plaintiff, the defendants claim that the decedent was without authority to enter into a contract for the sale of the subject property.
In support of their argument, the defendants attached a copy of the original trust and a copy of the first amendment to the trust, which provided for the deletion of article 5 of the original trust.[2] The defendants also attached an affidavit, in which they state that the trust was amended in consultation with an experienced attorney. (Defendants' Affidavit, ¶ 6-7.)
In opposition, the plaintiff admits that the trust was irrevocable. He argues, however, that the decedent had the authority to enter into the subject contract because he had the authority to sell the corpus of the trust to provide income for the beneficiaries of the trust. The plaintiff cites the "prudent investor" rule for the proposition that a trustee is charged with the duty of administering a trust corpus to benefit the beneficiaries of the trust. The plaintiff further claims that the terms of the amended trust did not expressly prevent the sale of the subject property for a purpose such as benefitting the beneficiaries of the trust; therefore, the decedent retained an "implied" right to sell the subject property to provide income for the beneficiaries.
"General principles of trust construction require an express reservation of the right to modify, amend, or revoke a trust." Goytizolov. Moore, 27 Conn. App. 22, 27, 604 A.2d 362 (1992). According to the language of article 5, "sale" of the trust property was meant to be synonymous with "revocation" of the trust: "The sale or other disposition by me of the whole or any part of the property held hereunder shall constitute as such whole or part a revocation of the trust." (Article 5). By deleting article 5, it follows that the decedent not only intended to create an irrevocable trust, he also intended to revoke his authority to sell any part of the property held under the trust. Evidence submitted by the defendants in their affidavit demonstrates that the decedent amended the trust in consultation with an experienced attorney. This suggests that if he had intended to remove his power to revoke or amend the trust, but had intended to retain his power to sell the subject CT Page 4579 property, as the plaintiff argues, he would have done so in express terms. "The court is under an obligation to determine the dispositive intent of the Settlor from the language of the instrument itself" Rosgenv. Veneziano, Superior Court, judicial district of Litchfield at Litchfield, Docket No. 073323, (December 31, 1998, Kocay, J.)
(23 Conn.L.Rptr. 617), citing Hartford National Bank v. Birre, 159 Conn. 35,266 A.2d 373 (1970). In the present case, there is no language in the trust instrument indicating that the decedent intended to retain the power to sell the trust corpus to benefit the beneficiaries and the plaintiff failed to offer any documentary evidence to the contrary.
The plaintiff's argument that the "prudent investor" rule dictated that the decedent had a duty to sell the property to benefit the beneficiaries is misplaced in that the rule applies to the normal powers of a trustee. See, e.g., Champagne v. Champagne, 54 Conn. App. 321, 734 A.2d 1048
(1999) ("The law governing the duties of a trustee respecting investment of trust assets is well settled. Generally, a trustee must act with the care of a prudent investor." (Internal quotation marks omitted.)) Id., 327. Once a settlor can no longer revoke a trust, however, he no longer has any authority or duties with regard to the trust. "The settlor has power to revoke the trust if and to the extent that by the terms of the trust he reserved such a power." 2 Restatement (Second), Trusts, § 330(1), p. 132 (1959). Finally, research did not reveal that Connecticut courts recognize any "implied" right of a trustee to sell trust property once a trust is irrevocable.
Accordingly, summary judgment is granted on the ground that the plaintiff's action is founded on a contract that is unenforceable because the signatory, the decedent, was without authority to enter into the contract.
____________________ Howard F. Zoarski Judge Trial Referee